MERRIAM v. ST. LOUIS, CAPE GIRARDEAU & FORT SMITH RAILWAY COMPANY et al.; Appellants.

In Banc, December 1, 1896.

136  145
137  445
136  145
138  416
136  145
e155  225
e155  227
136  145
157  580

1. **Practice**: RECEIVER: REVOKING APPOINTMENT: APPEAL: STATUTE. The act of the legislature of April 11, 1895 (Laws, p. 91), authorizing an appeal from an order refusing to revoke or to change an interlocutory order appointing a receiver is remedial in its character and should be liberally construed.

2. ——: ——: ——: ——: ——. On such appeal the appellate court will examine the record brought up for review and determine from the law and facts whether the lower court exercised a sound judicial discretion in refusing to revoke the appointment of the receiver.

3. **Railroad**: RECEIVER, APPOINTMENT OF. The insolvency of a railroad company and default in the payment of interest on its mortgage bonds do not of themselves authorize the appointment of a receiver of the corporation.

4. ——: ——. At the instance of a holder of railroad bonds secured by a divisional mortgage on one fourth of the mileage of the road, the appointment of a receiver for the whole road is unauthorized against the objection of persons holding mortgage liens on the remaining three fourths of the road.

5. ——: ——. Where the appointment of a receiver at the request of the holder of bonds under a divisional mortgage has been revoked and the receiver for an entire line appointed by another court, the appointment by the first court of a receiver for the whole road on an amended petition, *held*, improper.

*Appeal from Iron Circuit Court.*

REVERSED AND REMANDED.

*M. R. Smith* for St. Louis, Cape Girardeau & Fort Smith Railway Company, appellant.

(1)  The act of 1895 is remedial and should be liberally construed.  (2)  The motion to revoke as a

VOL. 136 mo—10

matter of law unquestionably challenges the sufficiency of the record to authorize the appointment of a receiver, and in that respect questions the correctness of the court's action, although of a discretionary character. 2 Beach, Mod. Eq. Prac., sec. 720, notes 2 and 3, and sec. 936, notes 3 and 4. *Tysen v. Railroad*, 247; Kerr on Receivers, p. 8, and note (S); *Pounder v. Tate*, 96 Ind. 331; *Naylor v. Sidner*, 106 Ind. 184; *Miller v. Lehman*, 87 Ala. 519; *Taylor v. Sweet*, 40 Mich. 736; *Hodges v. McDuff*, 69 Mich. 76; *Turnbull v. Lumber Co.*, 55 Mich. 397. (3) There should never have been a receiver appointed by the judge of the circuit court of Stoddard county, under p'aintiff's original petition for the defendant railway company, for the reason that the mortgages securing plaintiff's bonds did not cover the entire road (but only twenty-six miles thereof), and because he in no manner had any rights or liens, by virtue of the consolidated mortgage that covered the whole road, and further, because he was not a party to such consolidated mortgage. *Railroad v. Whitaker*, 5 S. W. Rep. 451; *Union Trust Co. v. Railroad*, 4 Cent. L. Journal, 585; *Farmers' Loan, etc., Co. v. Railroad*, 27 Fed. Rep. 147; 2 Jones on Mort., sec. 1520, and note (2). *Chicago v. U. S., etc., Co.*, 57 Pa. St. 91. "The plaintiff must show that he has some clear right to the property, or some lien upon it, or that the property constitutes a special fund, to which he has a right to resort for the satisfaction of his claim." *Mays v. Rose*, 1 Freeman's Ch. 718; *Williamson v. Railroad*, 1 Biss. (U. S.) 205; *Tysen v. Railroad*, 8 Biss. (U. S.) 247; *Owen v. Homan*, 4 H. L. Rep. 997. The plaintiff, in his suit, sues only for himself and others similarly situated, and wants possession of the whole property, but not for all the creditors of the defendant railway company. This he could not do, however, unless he had been a holder of consolidated bonds. *Gibert v.*

*Railroad*, 33 Gratt. (Va.) 586.   (4) No receiver should have been appointed under the original petition, for the defendant railway company's railroad and property, as prayed in his petition, for the reason that it could not be done without injustice to other and larger creditors, and for the reason that it was not apparent that plaintiff did not have an adequate remedy at law, and this the plaintiff virtually concedes in his amended petition.   It is clear that plaintiff was in no danger of losing either his interest or principal, as the security was ample for twice the amount of his indebtedness, and so far as he was concerned, there was no necessity of the appointment of a receiver.   *Farmers' Loan, etc., Co. v. Railroad*, 53 Fed. Rep. 182; *Turner v. Railroad*, 8 Biss. (U. S.) 315.  Had plaintiff desired merely to collect his interest, he could have secured a judgment and made a special charge against the road.  *Farmers' Loan, etc., Co. v. Railroad*, 53 Fed. Rep. 84.  And sequestered the rents and profits.   Waite on Insolvent Corp., secs. 182, 308, 317; *Roberts v. Stoner*, 18 Mo. 484; *Overton v. Railroad*, 10 Fed. Rep. 866; *Tysen v. Railroad*, 8 Biss. (U. S.) 247; *Railroad v. Soutter*, 2 Wall. 523.  (5) The amended petition filed by plaintiff on the eleventh day of June set up a different state of facts from the one set out in the original petition, and was not an amendment thereof, but was a complete substitute therefor, and thereby completely changed the ground or cause of action from the one set up in his original petition, and for such reason the defendant railway company's motion to strike said amended petition from the files of the case should have been sustained, and this is a question for review on this appeal.   *Sears v. Mo., etc., Co.*, 56 Mo. App. 122; *Scovill v. Glasner*, 79 Mo. 452; *Lumpkin v. Collier*, 69 Mo. 170.  (6) It is clear that the cross bill filed by the trust company was not germane to the matters set up in the original bill.   The cross

bill should grow out of the matters set up in the bill. A mere auxiliary of it. *Boland v. Ross*, 120 Mo. 214; *Krueger v. Ferry*, 41 N. J. Eq. 435; 1 Beach, Eq. Pract., sec. 433; *R. R. Signal Co. v. Union S. & S. Co.*, 43 Fed. Rep. 331; *May v. Armstrong*, 3 J. J. Marsh. 260; *Daniel v. Morrison*, 6 Dana, 186; *Field v. Schief-felin*, 7 Johns, Ch. 250; *Gallation v. Cunningham*, 8 Cow. 361; *Walden v. Bradley*, 14 Pet. 156; *Gage v. Mayer*, 117 Ill. 632; *Andrews v. Holsen*, 23 Ala. 219.

*R. B. Oliver* for Doyle, co-appellant.

(1) The jurisdiction of the Cape Girardeau circuit court was not only the first to attach to the entire railroad by reason of being the first filed and the first served on all the defendants, but it was the first and only court that had jurisdiction by seizure and possession of the *res*. *South Mo. Lumber Co. v. Wright*, 21 S. W. Rep. 811; Gluck & Becker on Receivers, sec. 30, p. 66; Beach on Receivers, sec. 20, p. 21. (2) Merriam's original bill was for the sequestration of the railroad property for the purpose of paying the defaulted interest coupons on two divisions, or twenty-six miles of the railroad. It was not for the foreclosure of the mortgages and the sale of the property. Doyle's suit raised different controversies and had different purposes in view. Merriam wanted a receiver to sequester the road to pay his interest. Doyle wanted the whole road managed by a receiver, the mortgages foreclosed, the property sold, and the proceeds applied according to the priority of the different lien holders. Doyle's bill set out all of the mortgages and Louis Houck was appointed receiver under Doyle's bill, and as such receiver took actual possession of the property. In such case the court that first seizes the property acquires jurisdiction over it to the exclusion of the other. Beach

on Modern Equity Practice, sec. 722, p. 706; *Shields v. Coleman*, 157 U. S. 168; *East Tenn.*, etc., *Co. v. Railroad*, 49 Fed. Rep. 608; *Wilmer v. Atlanta R. A. L.*, 2 Woods, 409. (3) But the sufficiency of Merriam's bill to authorize the appointment of a receiver had been successfully assaulted in the Stoddard circuit court. It was there affirmatively held that said bill did not state facts or present such an emergency as would authorize the appointment of a receiver. "When any fact has been directly in issue and judicially passed upon, it is *res adjudicata*, no matter what the nature of it, and can not be subsequently adjudicated." 21 Am. and Eng. Ency. Law, p. 252. "When a right or a fact has been judicially determined by a court of competent jurisdiction, the judgment therein, so long as it remains unreversed, shall be conclusive upon the parties." Chief Justice SHAW, *Sawyer v. Woodbury*, 7 Gray, 502; *Denver v. Lobenstein*, 3 Col. 216. The motion filed by this appellant in the Stoddard circuit court was a direct assault upon Merriam's original petition, and the order of said circuit court on said motion was tantamount to a judgment upon demurrer. *O'Connor v. Koch*, 56 Mo. 253; *Austin v. Loring*, 63 Mo. 19. (4) The appointment of a receiver rests upon the sound discretion of the court, to be exercised only as an auxiliary to the attainment of the ends of justice. *Mays v. Rose*, Freem. Ch. (Miss.) 718; *Blondheim v. Moore*, 11 Md. 364; Kerr on Receivers, 1; Bispham's Principles of Equity, sec. 577. *First.* The appointment of a receiver is reluctantly made and only upon the clearest proof of its propriety. 20 Am. and Eng. Ency. of Law, p. 16. *Second.* It must be a strong case which will justify this ultimate resort of a court of equity. The power will never be exercised while it is likely to produce irreparable injustice or injury to private rights, or where there exists any other safe or expedient remedy. *Crawford*

*v. Ross,* 39 Ga. 49; *Chicago, etc., Oil Co. v. U. S. Petroleum Co.,* 57 Pa. St. 91; *Latham v. Chafee,* 7 Fed. Rep. 526. (5) The circuit court of Iron county erred in not dismissing respondent's bill after the railroad company had made its plea of tender and payment, and asked said court, by repeated motions, to compel the respondent to accept the same and dismiss his bill. *State ex rel. v. Ross,* 31 S. W. Rep. 600; *Phillips v. Bailey,* 82 Mo. 639; *Whalen v. Reilly,* 61 Mo. 565; *Railroad v. Soutter,* 2 Wall. 510.

*Martin L. Clardy* for respondent.

(1) The act of the legislature of 1895 is inapplicable to this appeal. It was not intended that an appeal should lie from a mere interlocutory order; courts in construing statutes will look at their probable consequences. (2) The title of the act of 1895 does not meet the requirements of the constitution, article 4, section 28. (3) Even if the statute is constitutional and the appeal authorized, the inquiry of the reviewing court is confined to narrow limits. *Naylor v. Sidener,* 6 N. E. Rep. 345; *Iron Hall v. Baker,* 33 N. E. Rep. 1131; *Roberts v. Bank,* 37 Pac. Rep. 26. (4) The appointment of Klotz as receiver was proper and warranted by the law applicable thereto. (5) The property being a unit the objection is not well taken that the circuit court of Stoddard county had no jurisdiction to appoint a receiver for the reason that the mortgages securing plaintiff's bonds did not cover the entire road. (6) There is no material difference between the first and the amended petitions. The amendment was allowable. *Lumpkin v. Collier,* 69 Mo. 170; *Scovill v. Glasner,* 79 Mo. 449; Bliss on Code Pleadings, sec. 429; *Robertson v. Railroad,* 21 Mo. App. 633; *Stearns v. Railroad,* 94 Mo. 317.

GANTT, P. J.—This is an appeal from an order of the Iron county circuit court, made August 2, 1895, refusing to revoke and set aside an order made by said circuit court on August 1, 1895, appointing Eli Klotz receiver of the St. Louis, Cape Girardeau & Fort Smith Railway Company.

The appeal is prosecuted under the act of the general assembly of Missouri, of April 11, 1895, entitled, "An act to amend 'An act to repeal section 2246, Revised Statutes of 1889, and enact in lieu thereof a new section,' approved April 18, 1891, relating to the taking of appeals from interlocutory orders."   By this amendment an appeal is allowed from an "order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers."   Laws of Mo. 1895, p. 91.

The act is remedial and must be liberally construed.

It appears to have followed so closely the decisions of this court in *Greeley v. Railroad*, 123 Mo. 157, and *Merriam v. Railroad*, 126 Mo. 445, denying appeals in similar cases, that little doubt can exist of the legislative purpose.

Some suggestions were made in the original brief of the respondent, that it would not cover the appeal in this case and that there might be some doubt of the constitutionality of the said act for the reason that the amendment provided for the advancement of such appeals and for their summary disposition in this court. That this appeal falls within the terms and spirit of the amendment admits of no serious doubt, nor does the suggestion of its unconstitutionality appear to be founded upon any sound basis, and the learned counsel in his supplemental brief abandons both suggestions and contents himself with the reference to the terms of the amendment and by asserting that the court in its

consideration of the appeal should confine its inquiry within narrow limits.

In the absence of any restrictive words it would be contrary to the general trend of construction of remedial statutes to adopt such a view. The plain purpose and intent of the legislature should always be effected by the courts when not in conflict with the organic law, and the universal rule for the construction of remedial statutes is that they should receive a liberal, not a strict, interpretation.

As our jurisdiction is appellate we are necessarily restricted to the record brought up for review. With that limitation only it is not only our prerogative but obvious duty to review the action of the circuit court and determine from the law and the facts of the case whether the circuit court exercised a sound judicial discretion in refusing to revoke the appointment of the receiver. Unquestionably the propriety of the appointment itself is involved in this inquiry for on this record it is evident no change had occurred in the meantime in the relation of the parties, as the order was entered on one day and the motion to revoke was filed on the next day. The motion itself was most carefully drawn and brought before the court substantially the whole record of the case from its inception on March 3, 1893, in the circuit court of Stoddard county, down to and including the order of August 1, 1895, made in the Iron circuit court, and all the evidence offered has been duly preserved in the record brought to this court on this appeal, so that every fact upon which the circuit court based its action is before us for review.

On the third day of March, 1893, Edwin G. Merriam instituted an action in the circuit court of Stoddard county against The St. Louis, Cape Girardeau & Fort Smith Railway Company, Leo Doyle, trustee, and The Mercantile Trust Company of New York, trustee,

and Edward Hidden, trustee.   His petition alleged that
the defendant railway company ran from the city of
Cape Girardeau, through the counties of Cape Girar-
deau, Bollinger, Stoddard, Wayne, and Carter to Hunter
in the last named county; that said company on
September 1, 1880, executed its deed of trust to the
defendant Leo Doyle as trustee and thereby conveyed
to him all and singular the railroad of said company as
it was then constructed and was being constructed from
the city of Cape Girardeau to Delta, a point on the St.
Louis, Iron Mountain & Southern Railway Company
in said county, a distance of about fifteen miles, to-
gether with rights of way, depot grounds, railway
engines and other property belonging to said railway
company (a copy of which mortgage was made a part
of said petition) to secure the payment of one hundred
bonds of $1,000 each and numbered from one to one
hundred inclusive, payable to bearer on the first day of
September, A. D. 1900, with interest at the rate of six
per cent per annum payable semiannually, a copy of
which said bond is set forth in said mortgage.

It is further averred that the said railway company
afterward on July 18, 1881, made a second mortgage
whereby it conveyed to said Doyle all and singular the
following property and premises, to wit:   "All and
singular its said railroad as the same was then con-
structed or being constructed from Delta, a town or
point on the Belmont branch of the St. Louis, Iron
Mountain & Southern Railroad Company, to a point at
or near Lakeville in Stoddard county, Missouri, a dis-
tance of ten or eleven miles, together with rights of
way, depot grounds, railway fences, bridges, station
houses, engine houses, machine shops," etc., to secure
the payment of one hundred and seventy bonds of that
date of two series, respectively series A and B, series
A being from one to seventy and for $1,000 each, and

series B from one to one hundred for $100 each, all payable to bearer September 1, 1901, with interest at six per cent, payable semiannually.

It is then averred that said plaintiff Merriam was the owner and holder of twenty-seven of said bonds secured by the mortgage of September 1, 1880, for $1,000 each and forty-eight of said bonds for $1,000 each of series A secured by the mortgage of July 18, 1881, and twelve of the bonds of series B secured by said mortgage of July 18, 1881, for $100 each, aggregating bonds to the number of eighty-seven of the par value of $76,200.

It is further alleged that in 1885 the said railway company, under the name of Cape Girardeau Southwestern Railway Company, on the first day of December, 1885, made still another mortgage to said Leo Doyle, the same property conveyed in the two last described mortgages, to secure two hundred and fifty bonds of $1,000 each, therein named series "D," and two hundred bonds of $100 each, denominated series "E," aggregating $270,000.

It is further averred that on the twenty-sixth day of May, 1888, the said Cape Girardeau Southwestern Railway Company conveyed to the Mercantile Trust Company among other property a part of that conveyed by said two first described mortgages and subject to the last named mortgages to secure an indebtedness evidenced by bonds to the amount of $1,000,000, of the denomination of $1,000 each, for the purpose in part of redeeming or exchanging the bonds theretofore issued by said railway company and for the purpose of extinguishing the floating debt of said railway company, said mortgage being designated the consolidated mortgage; that some of said divisional mortgage bonds had been exchanged for said consolidated bonds.

Still another mortgage for $200,000 is alleged to have been executed to said Leo Doyle, May 27, 1882.

Default in the payment of the interest on Merriam's bonds on March 1, 1892, September 1, 1892, and March 1, 1893, is then alleged, and that the interest upon all of said bonds is due and unpaid and the company greatly indebted for wages and current expenses, also taxes and judgments.

It is then charged in the bill "that the property mortgaged is as your orator believes wholly inadequate to secure the mortgaged indebtedness existing there against, and that although the said mortgages are a first lien in part on certain sections of their said railway and appurtenances and second mortgages on others that said property is a unit and can not, without destroying the said several division and subordinate liens, he separated and operated in parts, but must, in order to protect the security and perform the public obligations and functions of said property, be.operated as a whole."

The pleader then charges that the trustee Doyle, being trustee in three other mortgages, is adverse to plaintiff's interest and hence is made defendant.

The following provision is in the first mortgage: "Nothing herein shall be construed to affect or put any burden of liability on the right of way, bridges, property or land acquired or to be acquired on and along the Lakeville division of the road of the party of the first part, extending from said junction to Lakeville in Stoddard county, Missouri, or beyond said point, or any donation and rights that may be made to aid in building said division of said railway."

And in the second mortgage there is this .provision, "and nothing herein shall be construed to affect or put any burden or liability on the right of way, bridges, property, or lands acquired or to be acquired on and along the roadway of the party of the first part lying and being southwest of Lakeville or any donations and

gifts that may be made to aid in building said railway in said direction.''

And in each of said mortgages express provision is made as follows:  ''Excluding and excepting any extension, branch, or branches which may hereafter be projected and constructed, hereafter to be owned or possessed or acquired and all the land or real estate which said company owns or may acquire, together with all and singular the rights, privileges and corporate property and franchises of said railway company.''

The prayer of the petition was:

''Wherefore, your orator prays that an account be taken of all bonds issued and now outstanding secured by the mortgages sued upon and of the amount of interest accrued and due thereon and that the revenues arising from the operation of said road be sequestered for the payment of all interest heretofore accrued or that may hereafter accrue upon his said bonds and those for whom he sues, secured by the mortgages aforesaid and that a receiver may be appointed to take possession of and operate the said railroad as a unit, receiving the revenues therefrom until the arrearage of interest on all said bonds is paid, taking care to observe and protect said property from dismemberment and the security from impairment in all things, managing the said property and appropriating the revenue derived from the operation thereof under the direction of this honorable court and for such other relief as to the court may seem meet and just in the premises and that said Doyle and said Mercantile Trust Company make answer setting forth their interests, and claims in and to each and every part of said railway and premises.''

Upon the presentation of this petition to Judge John G. Wear, the regular judge of the twenty-second circuit, a provisional order was made by him in vacation, without notice to the defendants in the petition,

appointing Eli Klotz. receiver of the defendant's entire railway. On March 13, 1893, this order appointing Klotz receiver, was vacated by the circuit court of Stoddard county, George Houck, special judge, presiding at the time. Afterwards on July 24, 1893, and in vacation of the Stoddard circuit court, and again without notice to the defendants in said suit, Judge Wear appointed said Klotz receiver of said railway company.

At the next regular term of the circuit court of Stoddard county in September, 1893, the defendant railway company filed its answer and on that day all the defendants except the Mercantile Trust Company, which had not been served, signed a stipulation with plaintiff for a change of venue to Iron county, and the venue was accordingly changed, and the transcript filed in the Iron county circuit court a few days before the October term, 1893.

At that term the railway company filed its motion to vacate the said second appointment of Klotz as receiver, which was at once overruled, and from that order the railway company appealed to this court. That appeal was dismissed solely for the reason that at that time there was no statute allowing an appeal from an order of a *nisi prius* court refusing to revoke and vacate an order appointing a receiver. *Merriam v. Railroad*, 126 Mo. 445.

After the dismissal of that appeal by this court, the parties again appeared in the Iron county circuit court on June 11, 1894, and defendant renewed its tender to plaintiff of the amount of his interest due with costs to that date, which was refused.

On the eleventh of June, 1894, plaintiff filed an amended petition. In this amended bill plaintiff set out specifically all the mortgages executed by the railroad company, during its entire existence, and the purpose and object of each and by averments sought

to extend the lien of the two mortgages on the two divisions from Cape Girardeau to Delta and from Delta to Lakeville. to and over the entire railroad from Cape Girardeau to Hunter and to all the property of defendant railway, and to have such lien declared superior and paramount to all other liens of the other mortgages herein before enumerated and described.

In neither petition did plaintiff pray for a foreclosure but simply for a receiver to operate and manage the road for the purpose, *first*, of paying the interest on his own bonds, and, *secondly*, on the remaining bonds if there were any surplus to be so applied.

Prior to the filing of this amended petition, the Mercantile Trust Company, which had not been served while the cause was pending in the Stoddard circuit court, voluntarily entered its appearance in the Iron county circuit court and filed its cross bill on May 18, 1894, which after denying the allegations of the petition set forth the conditions of its own consolidated mortgage and the breaches thereof by defendant railway company and prayed for a foreclosure of the said mortgage and a sale of the road.

The railway company moved to strike out this cross bill because it was not germane to the plaintiff's petition and for the further reason that as an original action it could not be commenced in Iron county to foreclose a mortgage on defendant's railroad, no part of which ran through or touched any part of Iron county.

After the amended petition was filed by Merriam, the Mercantile Trust Company withdrew its cross bill and refiled it, and thereupon defendant refiled a motion to strike it out a second time because it was not germane to either the original or amended petition and because the court could not entertain jurisdiction thereof as an original action in Iron county, no part of the mort-

gaged property lying or being in said county. The motion was overruled.

Defendant railway company also moved to strike out the amended petition because not properly an amendment but the substitution of a new cause of action and an entire change of the theory of the original suit. It also filed a plea to the jurisdiction of the court, which was overruled. Exceptions were duly saved to all these adverse rulings.

On the twenty-third and twenty-fifth days of April, 1895, motions were filed by Leo Doyle and Edward Hidden to vacate the appointment of Klotz as receiver, made by Judge Wear, July 24, 1893, which were sustained on May 2, 1895.

Afterwards on said second day of May, 1895, plaintiff filed a written application for the appointment of Klotz as receiver and introduced evidence of his fitness for the trust, against which Leo Doyle protested and the matter was continued until August 1, 1895, the court setting aside its order vacating Judge Wear's appointment.

On August 1, Judge Green again sustained the motions of both Doyle and Hidden to vacate Judge Wear's appointment of Klotz. And thereupon plaintiff Merriam again made application for Klotz's appointment which the court sustained. The defendants then joined in a motion to revoke this last appointment which was overruled, from which, as already said, this appeal is taken.

While these various steps were progressing in the Stoddard and Iron circuit courts, Leo Doyle, as trustee in the various mortgages, commenced an action in the circuit court of Cape Girardeau county on December 27, 1893, returnable to the January term, 1894, of said court, to foreclose said mortgages and for a receiver. Due notice was given to all parties and on January 11,

1894, a provisional appointment of Louis Houck as receiver was made by said court. And on February 27, 1894, the said order was confirmed.

The receiver Klotz has never been in possession of said railroad or any part of it, but the possession of the road has been constantly in the possession of Louis Houck as receiver, first under his appointment by the Cape Girardeau court of common pleas and afterwards by virtue of his appointment and its confirmation by the circuit court of Cape Girardeau county; and it was being operated by him as such when the circuit court of Iron county on August 2, 1895, appointed Eli Klotz receiver.

In *Sage v. Railroad,* 125 U. S. 361, the supreme court of the United States announced the general principle governing courts of equity in the appointment of receivers for railroads in these words: "Whether a receiver shall be appointed is always a matter of discretion, to be exercised sparingly and with great caution in the case of quasi public corporations operating a public highway, and always with reference to the special circumstances of each case as it arises." And in the same case the same learned court also said: "We do not mean to say that a single judgment creditor or any number of such creditors of a railroad company are entitled as matter of right, to have its property put in the hands of a receiver merely because of its failure or refusal to pay its debts."

Thirty years prior to the decision of the supreme court of the United States in the last mentioned case, the supreme court of Maryland, in *Blondheim v. Moore,* 11 Md. 365, had stated the general principles applicable to such appointments as follows: "1st. That the power of appointment is a delicate one, and to be exercised with great circumspection. 2nd. That it must appear the claimant has a title to the property, and the

court must by satisfied by affidavit, that a receiver is necessary to preserve the property. 3rd. That there is no case in which the court appoints a receiver merely because the measure can do no harm. 4th. That 'fraud or imminent danger, if the intermediate possession should not be taken by the court, must be clearly' proved;' and 5thly. That unless the necessity be of the most stringent character, the court will not appoint until the defendant is first heard in response to the application.''

And in Mississippi, in *Mays v. Rose*, 1 Freeman's Chy. Rep. 718, it was further said: ''The plaintiff must show, first, either that he has a clear right to the property itself; or that he has some lien upon it; or that the property constitutes a special fund to which he has a right to resort, for the satisfaction of his claim.''

In different language many other courts have held the same way.

While the discretion is lodged in the circuit court in the first instance and is a judicial discretion it is reviewable by the appellate courts. *Blondheim v. Moore, supra; Railroad v. Soutter*, 2 Wall. (U. S.) 523.

Keeping these principles in view and applying these tests to the original petition filed March 3, 1893, in Stoddard county, let us first inquire what ''imminent danger'' was alleged in the bill which justified Judge Wear in appointing Klotz receiver, *without notice* to the defendant.

It was made to appear that *the property* to be taken in charge by the court was *a railroad*, its depots, warehouses, etc. It was principally of a purely local character, incapable of being spirited out of the jurisdiction of the court, nor was there any allegation that such a purpose existed. The bill nowhere alleges that the president or other chief officers of the road had

absconded or that their places of residence were un-
known. The general office of the road was at Cape
Girardeau. We fail to find in the bill any such
*exceptional circumstance* as would have authorized the
judge of Stoddard circuit court to have dispensed
with notice. Kerr, in his work on receivers, has col-
lated the decisions showing that a receiver will not be
appointed without notice except when a pressing neces-
sity exists and there is clear proof of the exigency in
the particular case. Kerr on Receivers [2 Ed.], p.
147, note 1.

Next let us see what evidence of fraud is to be
found in the original petition of March 3, 1893. The
bill alleges the incorporation of the company; the issu-
ance of the different series of bonds, the execution of
the various mortgages to secure the same; the appoint-
ment of Leo Doyle, trustee in certain of the mortgages,
and the Mercantile Trust Company, trustee in the con-
solidated mortgage; a default in interest for eighteen
months on plaintiff's bonds, $76,200, and a general
charge of insolvency. These constitute the whole of
the substantive averments.

The plaintiff merely charges *upon information and
belief* default on all other bonds. Plaintiff says he is
*informed* that the company is largely indebted for
wages and operating expenses and that these claims
have been assigned to the officers of the company for
the purpose of asserting liens therefor prior to plain-
tiff's mortgages; that taxes are due and unpaid and
there is danger of the road being sold for taxes and
that the road is in danger of being segregated and dis-
membered—that the property is inadequate to pay the
mortgages and debts. In a word, all of these allegations
simply amount to a charge of insolvency and default
in the payment of interest—averments, of themselves,
not sufficient without more, to justify the appointment

of a receiver. *Union Trust Co. v. Railroad*, 4 Dill. 114; *Williamson v. Railroad,* 1 Biss. 198.

But there existed a much stronger reason why Judge Wear should have declined to appoint a receiver for the whole of said railway.

.    The plaintiff held bonds secured by the divisional mortgage on the road from Cape Girardeau to Delta, and other bonds, secured by mortgage on that portion of the road from Delta to Lakeville. His holdings only amounted to $76,200, and interest for eighteen months all told. Language could scarcely have been more explicit in excluding from the lien of each of said divisional mortgages any and all that part of the railroad of defendant from Lakeville to Hunter, a distance of about seventy-five miles. Upon this last mentioned portion of the road plaintiff had no mortgage lien nor was his debt a judgment debt, and yet he prayed and the judge in vacation made the appointment of the receiver for the *whole road*.

It is fundamental that to authorize a receiver the plaintiff must show that he has a right either to the property itself or that he has some lien upon it or that it constitutes a special fund to which he has a right to resort to satisfaction of his claim. According to his own petition there were other creditors, both general and mortgage creditors, with liens upon this line from Lakeville to Hunter. By what principle of law or equity could plaintiff ask, and the judge give into the possession of a receiver, the whole of this railroad and decree that all the profits of the whole line should be diverted to the payment of the interest on plaintiff's bonds which were secured by liens only on twenty-six miles, to the exclusion of the other creditors and lienors? How far short does this fall of taking defendant's line from Lakeville to Hunter without due process of law.

The proposition appears too plain for argument that under the allegations of this first petition it was manifestly improper and erroneous to appoint or assume to appoint a receiver for any portion of said railroad not covered by plaintiff's mortgage in the absence of any other lien or judgment in favor of plaintiff against it.

It is evident that Judge Wear had acquired no jurisdiction over that portion of the road lying between Lakeville and Hunter, other than was authorized by the petition, and as the petition set forth the two divisional mortgages from Cape Girardeau to Delta, from Delta to Lakeville, and no other right to a lien, the court had no power to extend those mortgages beyond their legal effect. *Railroad v. Whitaker*, 5 S. W. Rep. 448; *Union Trust Co. v. Railroad*, 4 Dill. 114.

The plaintiff was not a party to the consolidated mortgage. He had not exchanged his bonds for consolidated bonds, and his averment that he sued for himself and all others similarly situated will not enable him to avail himself of that mortgage. He was not in a like condition with the consolidated bond and mortgage creditors. The intervention of that and other mortgages on the whole road, however, did present an unanswerable objection to the judge of the circuit court of Stoddard county why he should not have appointed a receiver for the entire road at the instance of a creditor who had a lien only on twenty-six miles and without notice either to the road or its other lien creditors. Moreover, there is no averment in that bill that plaintiff was without adequate remedy at law nor a statement of such facts as of itself would show plaintiff had no adequate remedy at law. *Humphreys v. Atlantic Milling Co.*, 98 Mo. 551; Story's Eq. Plead. [Red. Ed.], sec. 481 *a*.

And if an equitable remedy were sought, the prac-

tice had been already marked out. A decree *nisi* for his interest would have been all that was necessary when we consider the small amount of the interest due and the ample security afforded by the mortgage.

We have felt impelled to examine the first petition because of its bearing upon subsequent steps in the cause.

On the thirteenth day of March, 1893, the provisional order of Judge Wear appointing Klotz receiver was revoked by the circuit court of Stoddard county, but on July 24, 1893, Judge Wear, again in vacation, and again without notice to the company or other lien creditors, and while an application for change of venue was pending because of his alleged prejudice against defendant, made another appointment of Klotz as receiver. The change of venue was duly awarded to Iron county, and, as already stated, upon the motions of Leo Doyle and Edward Hidden, Judge Green, on August 1, 1895, vacated and set aside the appointment of Klotz, last made by Judge Wear, on July 24, 1893.

In the meantime, however, on June 11, 1894, plaintiff had filed an amended bill in the Iron circuit court and the Mercantile Trust Company which had not been served, voluntarily entered its appearance and filed both an answer and a cross bill praying for a foreclosure of the consolidated mortgage, and in the meantime Leo Doyle, on December 27, 1893, had commenced a foreclosure suit in the circuit court of Cape Girardeau county as trustee in the several mortgages already mentioned and prayed for a receiver and that court, upon proof of notice to all parties, had appointed a receiver, Louis Houck, and the appointment was confirmed and the receiver qualified February 27, 1894.

These then are the circumstances surrounding the

case when, on August 1, 1895, plaintiff moved the circuit court of Iron county for the appointment of a receiver and all these facts were laid before it as reasons why it should not make such an appointment, and thus we are called upon to review the discretion of the Iron circuit court in making the appointment of August 2, 1895.

While the plaintiff's rights were the same when he filed both the original and amended petitions, the theories of his pleadings were entirely different. In his original petition he recognized that his liens were only divisional mortgages on twenty-six miles of railroad from Cape Girardeau to Lakeville, and the ground of his equity was that while his lien only covered a portion of the road yet the road was a unit and that to place a part of it in the hands of a receiver and leave the remaining seventy-five miles in the hands of the company or other mortgagees, would work its dismemberment and destruction. In his amended petition, founded upon identically the same mortgages and bonds, he assumes and declares that the two divisional mortgages of September 1, 1880, and of July, 1881, are the first and superior *claim*, *lien*, and *charge* upon *all* the property of said railroad from Cape Girardeau to Hunter and prayed they might be so held to be by the court. Plaintiff alleged that his mortgages contained no provisions whereby the principal of said bonds shall become due upon default in the payment of the interest coupons annexed to said bonds as they matured.

Conceding that the amended petition of plaintiff and the cross bill of the Mercantile Trust Company were sufficient, when considered solely as pleadings, to authorize the circuit court of Iron county to appoint a receiver, it was the duty of the court to whom these

applications were made to consider the actual circumstances of the case.

The judge of that court was confronted with a peculiar condition of affairs. Waiving all question of prior jurisdiction, it was undeniable that in his own opinion no receiver had been lawfully appointed for the road by the Stoddard county circuit court or the judge thereof, because he has judicially so declared on this record, and in the interim from the beginning of this suit, March 3, 1893, the actual possession of this property had never been under the control of either the Stoddard or Iron county circuit courts. It is immaterial what caused the failure to acquire the possession further than Judge Green himself had decided that Judge Wear's appointment, July 24, 1893, was invalid.

Moreover, he was not called upon to appoint a receiver upon the same petition that was filed before Judge Wear but a new petition and a cross bill were before him and only on August 1, 1895, was he to determine their sufficiency. Certainly it can not be maintained that any appointment he might then make should relate to a time previous thereto. He was to determine that day whether all the circumstances required such an appointment at his hands.

The doctrine of relation is a most necessary and useful one when properly invoked, but is ever applied with the limitation that it must not affect the rights of strangers or third person. So that while plaintiff was seeking only a receiver in the Stoddard court without notice to those interested in this important property and by ill advised action had obtained an appointment which the courts have refused to sustain, Leo Doyle, the trustee, selected to represent the bondholders in three distinct mortgages, together covering the whole road, had begun a suit for a foreclosure thereof in the circuit court of Cape Girardeau county and upon notice to all

parties that court had appointed and confirmed its own receiver and he was in the actual possession of the road and it was proceeding to adjust the liens thereon preparatory to a foreclosure sale.

Any appointment that could be made by the Iron county court could only produce a clash of jurisdiction, and be productive of much probable inconvenience, delay, and injury to all parties interested, and, this being true, a wise discretion it appears to us would have dictated that the circuit court of Iron county should have refrained altogether from appointing a receiver, or if it made the appointment at all have authorized him only to receive from the principal receiver in the Cape Girardeau court from time to time the proportionate share of the rents and profits from the two divisions by which his bonds were secured, and on the cross bill no receiver should have been granted as the Mercantile Trust Company had never applied for a receiver until long after the appointment and confirmation of the receiver in the Cape Girardeau court.

As to that company it was plain that the Cape Girardeau circuit court had not only first acquired jurisdiction over the road but of that company as well, and its receiver was in actual possession. The Iron circuit court had no jurisdiction over the Mercantile Trust Company until it voluntarily entered its appearance therein and had no jurisdiction of its cross bill until long after the Cape Girardeau court had not only the subject-matter but the parties before it. Under such a state of facts it was manifestly erroneous to attempt to interfere with the possession of the Cape Girardeau circuit court, and it becomes unnecessary at this time to pass upon the sufficiency of the cross bill, or whether it is germane to the amended petition.

The judgment of the circuit court refusing to revoke and set aside its order appointing Eli Klotz

receiver of said railroad is accordingly reversed and the cause remanded to said court with directions to sustain said motion. BARCLAY, MACFARLANE, and BURGESS, JJ., concur; BRACE, C. J., SHERWOOD, and ROBINSON, JJ., dissent.