THOMPSON, *Appellant*, v. METROPOLITAN STREET RAILWAY COMPANY.

In Banc, June 15, 1897.

1. **Negligence:** PROXIMATE CAUSE. Where the evidence discloses that a dangerous appliance relied on by plaintiff as the basis of defendant's negligence was not the proximate cause of the injury, the trial court should set aside the verdict of the jury if for plaintiff.

2. ————: CARE IN CONSTRUCTION: MUTUAL OBLIGATIONS. Street car companies are required to so construct their cars that passengers may ride thereon and alight therefrom in safety; but this does not mean that the courts can dictate that they shall follow a certain pattern of construction, or that the cars shall be so made that injury to passengers shall be absolutely impossible. The company must

exercise reasonable precaution to prevent accidents to passengers, but it does not become insurers of their safety; on the other hand, passengers must use the car with reasonable circumspection and care.

3. ———: LONG USE OF AN APPLIANCE WITHOUT ACCIDENT. While a long and general use of an appliance on a street car without accident will not exempt the party from liability when the appliance does cause an accident, yet the long and successful use of a like appliance by this and other companies without accident, and the further fact that this appliance in the particular case is visible to all passengers, should exempt the company from liability for negligence in its use, on the ground that the occurrence of the accident is one so rare as to be unexpected and so unexpected that a reasonable precaution would not have anticipated it. Unless there is something in the construction or use of the appliance to suggest to the company that it is or will be dangerous to passengers, the company is not guilty of negligence in using it.

(*Per* BARCLAY, C. J., AND GANTT, MACFARLANE, BURGESS AND BRACE, JJ.)

4. Appellate Practice: APPEAL FROM ORDER SETTING ASIDE VERDICT. Plaintiff had judgment for damages in an action for personal injuries. On defendant's motion, a new trial was granted on the ground that the verdict should have been for defendant. One of the reasons of the motion was that the verdict was against the weight of evidence; *held*, that as the order for a new trial was within the proper bounds of the discretionary power of the circuit court to determine the weight of evidence, the order would be affirmed, without going further into the merits of the case on plaintiff's appeal.

*Appeal from Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Hollis & Lithgow* for appellant.

(1) The court erred in sustaining the motion for new trial. *Baughman v. N. W. W. Co.*, 58 Mo. App. 580; *Lovell v. Davis*, 52 Mo. App. 342; *Stanard Milling Co. v. Transit Co.*, 122 Mo. 258; *Kelly v. Railroad*, 70 Mo. 608; *St. Vrain v. Columbia, etc., Co.*,

56 Mo. 590; *Richey v. Burnes*, 83 Mo. 364. (2) The verdict was for the right party. *Baehneke v. Railroad*, 22 N. Y. S. 712; *Hegeman v. Railroad*, 16 Bush. 353; Hutchinson on Carriers, secs. 526, 517; *Duggan v. Railroad*, 46 Mo. App. 266; *Matz v. Railroad*, 53 N. W. Rep. 1071. (3) It has generally been the rule in this State to defer to the action of the trial court in granting new trials, but this rule does not apply in granting new trials on the weight of evidence where the testimony of plaintiff is largely in depositions. *Baker v. Rockabrand*, 118 Ill. 365; *McCormick v. Miller*, 102 Ill. 208; *Knisele v. Sampson*; 100 Ill. 573; *Sherman v. Mitchell*, 46 Cal. 576. (4) Whenever, from all the facts and circumstances in evidence, a jury may, without doing violence to the dictates of reason and common sense, infer a given fact on account of its known relation to the facts proven, the court should not interpose its own different conclusions. *Peck v. Railroad*, 31 Mo. App. 123; *Spohn v. Railroad*, 101 Mo. 417; *Matz v. Railroad*, 53 N. W. Rep. 1071. (5) Where the facts are either disputed or different inferences may fairly be drawn from the undisputed facts, the question of negligence should be submitted to the jury. *Huhn v. Railroad*, 92 Mo. 440; *Dowell v. Guthrie*, 116 Mo. 646; *Barry v. Railroad*, 98 Mo. 62; *Tabler v. Railroad*, 93 Mo. 79; *Boland v. Kansas City*, 32 Mo. App. 8; *Corrister v. Railroad*, 25 Mo. App. 619; *Kinney v. Springfield*, 35 Mo. App. 97; *Ball v. Independence*, 41 Mo. App. 469; *Norton v. Ittner*, 56 Mo. 351; *Groll v. Tower*, 85 Mo. 249. (6) The fourth instruction given for defendant is certainly erroneous. It selects one set of facts and tells the jury that they must find from the greatest weight of the evidence that plaintiff's foot caught in the wheel box and the side of the car, and while so fastened she fell to the ground with her foot so fastened, and unless they do so find,

the verdict must be for defendant.    *Twohey v. Fruin,*
96 Mo. 109; *Ewing v. Ewing,* 44 Mo. 23; *Rothchild v.
Ins. Co.,* 62 Mo. 356; *Jones v. Jones,* 57 Mo. 142; *Fine
v. St. Louis Public Schools,* 30 Mo. 166; *State v. Smith,*
53 Mo. 267; *Chouquette v. Barada,* 28 Mo. 491; *State v.
Witten,* 100 Mo. 530; *Barr v. Kansas City,* 105 Mo.
558; *State v. Patrick,* 107 Mo. 188; *Chappell v. Allen,*
38 Mo. 213; *Anderson v. Kincheloe,* 30 Mo. 525; *For-
rester v. Moore,* 77 Mo. 651.    These opinions all hold
that all the evidence and surrounding circumstances
must be taken into consideration.

*Pratt, Dana & Black* for respondent.

(1) If the motion for a new trial was properly sus-
tained for any reason, whether that given by the trial
court or any other, which can be deduced from the
record, then the order sustaining it must be affirmed.
*Baughman v. Water Works,* 58 Mo. App. 580; *Hewitt
v. Steele,* 118 Mo. 463; *Bank v. Wood,* 124 Mo. 72;
*Stanard Co. v. Transit Co.,* 122 Mo. 258.    (2) There
were errors committed at the trial in the admission of
evidence over defendant's objection.    *Berning v. Med-
art,* 56 Mo. App. 449; *Worheide v. Car Co.,* 32 Mo.
App. 367; *Smith v. Railroad,* 69 Mo. 37.    (3) The
trial court erred in refusing defendant's third instruc-
tion.    *Thompson v. Railroad,* 36 S. W. Rep. 625; *Bun-
yan v. Railroad,* 127 Mo. 12.    (4) The verdict was
against the evidence and against the weight of the evi-
dence, and was, therefore, properly set aside.    *Reid v.
Ins. Co.,* 58 Mo. 430; *Bank v. Armstrong,* 92 Mo.
265.    All the foregoing points were set out in the
motion for a new trial and should therefore be con-
sidered in determining whether it was properly sus-
tained.    (5) The demurrer to plaintiff's testimony
should have been sustained, and a verdict directed for

defendant; therefore the action of the trial judge in sustaining the motion for new trial must be affirmed. *Fox v. Mayor, etc.*, 24 N. Y. S. 43; *Crocheron v. North Shore Co.*, 56 N. Y. 656; *Loftus v. Ferry Co.*, 84 N. Y. 455; *Lafflin v. Railroad*, 106 N. Y. 136; *Farley v. Traction Co.*, 18 Atl. Rep. 1090; *Keller v. Railroad*, 24 Atl. Rep. 159; *Werbowlsky v. Railroad*, 48 N. W. Rep. 1097; *Selddon v. Bickley*, 25 Atl. Rep. 1104; *Race v. Ferry Co.*, 34 N. E. Rep. 280; *Thompson v. Railroad*, 36 S. W. Rep. 625.   (6) It appearing that the trial court should have directed a verdict for defendant and rendered judgment in its favor, this court, the whole record being properly before it, should render judgment for defendant.   R. S. 1889, secs. 2113, 2114, and 2304;  *Hunt v. Railroad et al.*, 89 Mo. 607;  *Carroll v. Railroad*, 107 Mo. 653;  *Kinealy v. Macklin*, 67 Mo. 98;  *Sparks v. Transfer Co.*, 104 Mo. 536;  *McFarland v. Railroad*, 125 Mo. 253;  *Brown v. Dressler*, 125 Mo. 589;  *Long v. Moon*, 107 Mo. 341;  *Thompson v. Cohen*, 127 Mo. 241;  *Baker v. Railroad*, 122 Mo. 547.

Robinson, J.—This case is here on an appeal from an order setting aside the verdict of a jury.  The action was begun to recover damages for injuries alleged to have resulted to plaintiff from defendant's negligence.  Plaintiff was a passenger on one of defendant's open summer cars in Kansas City, and when attempting to alight therefrom fell and was injured.  The case was tried by a jury resulting in a verdict for plaintiff for $5,000.  Defendant filed its motion to set aside the verdict and grant it a new trial, which was sustained, and the reason assigned by the court for so doing was "that the verdict should have been for the defendant under the evidence submitted instead of plaintiff."

Plaintiff prosecutes this appeal from that order, and asks this court to remand the cause with directions to the trial court to enter judgment for plaintiff on the verdict. The defendant on the other hand, however, contends that the trial court properly set aside the verdict not only for the reason stated in its order, but also on account of other errors assigned in its motion for a new trial, and further urges that as the whole record is now before this court, and that no liability on its part is shown, this court should enter such judgment here, or remand the cause with directions that the trial court enter such judgment now, as might have been entered by that court notwithstanding the verdict, as provided by section 2304, Revised Statutes.

Plaintiff charges in her petition that defendant carelessly and negligently used cars dangerously constructed in this, that the wheels were permitted to extend up through the floor of its car to a height of five or six inches over which was placed a sheet iron fender or wheelhouse. That the outside of the fender or wheelhouse was three inches from the outside support of the car seats under which it extended, thereby forming a slot or space between the wheelhouse and the car seat into which a passenger without fault is liable to get a foot caught while attempting to alight from its cars and for her cause of action states that: "On or about the thirtieth day of August, 1891, she became a passenger of defendant, on one of its lines of road in said Jackson county, Missouri, by boarding one of its cars and paying the usual fare to be transported to a point on its line known as Twelfth and Mulberry streets in Kansas City; that when said car arrived at her point of destination the servants operating and managing the same stopped at plaintiff's request for her to alight therefrom; that she was sitting in the grip car of defendant, in a seat just back

of the right front wheel and her foot came in contact with the sheet iron fender above described as covering said wheel; that in her attempt to alight from said car, as she stepped off, with her right foot from the right side of said car, her left foot stepped into the slot or trap so carelessly and negligently made and left in its negligent construction; the catching of said left foot threw plaintiff with great force to the hard pavement, bruising and spraining her right arm, wrist and hand; the catching of the left foot in said place caused her left ankle, foot, knee and hip to be sprained; that the sprain and injury to the said knee and hip is permanent; that she, on account of same, has suffered great physical pain and mental anguish and is a cripple for life. That the same was directly caused by the wrongful act of defendant in so carelessly and negligently constructing said car as aforesaid, to her damage in the sum of ten thousand dollars for which she asks judgment with costs of suit."

Plaintiff is not very clear in her testimony as to just how or why her left foot in getting into and becoming fastened between the wheelhouse or fender and the side of the car seat in front of her, threw her to the pavement or caused her to fall. Nor is her statement as to how the fall occurred ample to warrant the inference that the fall was the result of the foot becoming fastened, but is only sufficient to explain the way the sprain to her ankle might have happened after the fall did occur.

Below is given all that plaintiff said on that branch of the case.

Being sworn, she testified:

"I am 47 years old, live in Kansas City, Missouri, for seventeen years; husband's name, William Thompson. He is a stone mason. I was on the Metropolitan street cars August 30th, 1891. I got on at the

stock yards to be carried to Twelfth and Mulberry streets, close to my home.   I sat on the single seat on the right hand side of the grip car.   The car stopped at Twelfth and Mulberry streets.   I stood up and got hold of the back of the seat, and, as I made a motion to get off, I moved my right foot to get out, my left foot stepped in this—I don't know what you call it—kind of a trap, or what it is I couldn't say; there where the wheel comes up; and, as I put my right foot to step down, my left foot hadn't got down, and when my right foot got there, as I tried to get hold of the post, my foot cracked and I lost all balance of myself and my sight left my eyes.   I was conscious for a few minutes when I struck the ground.   A colored man came and a white gentleman came to my assistance.   I hollered I was hurt.   I thought my leg, ankle and hip were broke.   They took my foot out and laid me down by the side of the car.   Pretty soon a lady came to my assistance.   I recognize this model as being about full size of one half the car.   There was a back to all the seats.   You could turn them either way.   It was in this fender where my foot caught.   I was in the front seat of the two short seats.   My foot caught between the fender and the side here.   I did not get quite down on the running board.   I took hold of back of the seat and aimed to catch the post with my left hand, when my foot caught; I hollered and fell right on the ground. They carried me over to the sidewalk, got a hack and took me home.   .   .   .   I can not tell any more minutely than I did how my foot happened to get into that place.   It was kind of dark.   Only as I moved to get out of the seat, when I moved my right foot I found my left foot was caught there.   It hurt me so bad that I left the post and fell back. I gave my ankle a wrench as I went to step on the running board."

Cross-examined:

"This car here (model in court) practically represents the grip car as it was when I got on it; that is the way the wheel was covered under the seat. I did not notice it before I fell. It was dark when I got on. I had an idea it was there, but I did not think my foot could catch in there. I knew it was there, but did not know it was liable to catch anyone's foot."

"*Q.* You were lying on the ground and your foot was up, in that position; is that right? *A.* I suppose it is. The woman who came up is Mrs. Kircheshur; have known her two or three years. She has been to see me since I was hurt. She helped take me home. It was my left foot that got fastened. My foot hadn't got down to the running board yet; as I was putting it down my left foot cracked and I grabbed for the post, and I didn't catch it, and fell over. I fell right out. I did not get hold of the post. I got hold of the back of the seat. I couldn't say whether I got hold of the posts or not. My foot was caught, and I couldn't see; a blaze of fire jumped out of my eyes when my foot got hurt. I hadn't hold of anything. The heel and toe both caught. I did not look about the car when I started to get off. I didn't give it a thought. I don't know whether my foot was caught there when I started to rise up. I don't think it was. I don't know how it got there. I had to stand up to make room to get my other foot out. The car didn't move at all."

"*Q.* Here is where you sat and your foot caught in between this fender and the side here? *A.* Yes, sir.

"*Q.* You stepped down with your right foot on the running board? *A.* Didn't get quite down on the running board.

"*Q.* Which post did you take hold of? There was a back to this seat? *A.* Yes, sir.

"*Q.* Did you take hold of the back of the seat or the post? *A.* The back of the seat; I aimed to catch the post.

"*Q.* The one in front or back of you? *A.* The one with my left hand."

Whether plaintiff's foot was fastened or rested loosely in the space between the wheel house and the side of the car seat at the time she made the effort with her right foot to step down upon the running board or side step of the car, the left foot had and could perform no other office than that of supporting the weight of her body until the right foot was landed on the step below. How the mere circumstance of the left foot being held fast in the position between the wheel house and the side of the car seat would have any tendency to cause plaintiff when using her right foot in stepping down upon the platform or running board below, to fall, we are at a loss to understand. Plaintiff in her testimony does not undertake to explain how the left foot being fastened did or could cause her to fall forward from the car, and we know of no physical laws when applied to the facts of this case, as to positions assumed and motions made by plaintiff, just previous to and when the fall occurred, that would indicate or justify the conclusion that the fastened condition of plaintiff's left foot caused the fall after the manner described by her. Plaintiff's action here is predicated upon the theory that her fall was occasioned by her foot becoming fastened between the wheelhouse and the side of the car seat and not that her injuries were incurred by reason of not being able to extricate her foot from its position after she began to fall. In this case plaintiff was required to show directly that the fastening of her foot in the manner indicated by her, caused her to fall; or she

must show facts from positions assumed and efforts made by her while attempting to alight from defendant's car, from which the fall could be inferred as resulting from the fact of her foot getting into and becoming fastened in the manner testified to by her. The connection of the cause and effect must be established.

Conceding that the wheelhouse as constructed on defendant's car, causing an open space to be made between it and the side of the car, was a dangerous appliance, from the use of which on the car, injuries might reasonably result to passengers riding thereon, there was no testimony on this case given to warrant the conclusion that it was the responsible proximate cause of plaintiff's injury. The action of the trial court in setting aside the verdict of the jury was then correct for that reason.

Defendant now contends that if it be conceded that plaintiff was injured as alleged, that still no proof of negligence on its part was shown, and for that reason its peremptory instruction should have been given directing a finding in its favor; and further that as the whole record in the case is now before the court it should render such judgment here as the trial court should have rendered when the case was before it. This question then presents itself: Is the wheelhouse or fender as used and constructed on defendant's car, in such a manner as to leave an opening or space three inches wide between its outer edge and the side of the car in which plaintiff's foot was caught, causing her to be injured, a fact which of its own force established the allegation of negligence, or is the fender such an appliance that defendant could have reasonably anticipated from its use an accident therefrom, after the manner that plaintiff claims her fall was occasioned?

The wheelhouse or fender on this car from which defendant fell, according to the testimony of all the witnesses, was substantially alike in construction and location on the car, as is provided on all other cars of like character used throughout the country by this and other street car companies on its open summer cars. This was a grip car so constructed that there was an aisle or opening about two feet wide extending lengthwise of the car. About its center, the aisle is enlarged to a width of about four feet for a distance of six or eight feet, and this space is called the grip-man's box. The seats on this car were placed cross-wise the car in rows and extend from the aisle to the outside of the car on either side. There are two small or single seats on both sides of the gripman's box, necessitated by the enlargement of the aisle for his use in manipulating the car, and two double seats take up the space on each side of the aisle of the car in front and in the rear of the single or narrow seats. The height of the platform of this car from the ground is twenty-seven inches, and to reach it and to accommodate passengers in getting into and alighting therefrom a step or running board was placed half way between the platform and the ground extending the full length of the car.

The wheels on which this, as on almost all cars of this character, are thirty inches high and extend above and through the platform of the car some three or four inches and over these are placed a sheet iron fender, or as more commonly called, a wheelhouse in the shape of an oval, and each of these fenders occupy a part of the space under one seat, and the space between the seat and the one in front of or behind it. Between this fender and the side of the car, there is left a space from two and one half to three inches wide, into which the passenger occupying a seat in the

car as plaintiff was, may place his or her foot or feet. This fender was in full view of the passenger as he or she would enter defendant's car to take the seat occupied by plaintiff, as was the space between the fender and the side of the car where plaintiff claims to have had her foot at the time of receiving her injury. In fact its position was such that it enforced observation from one attempting to enter the car at that point, and if a passenger should so stubbornly fail to use his sense of sight as not to observe it, the sense of touch would likewise of necessity be so operated upon by the fender as to furnish unmistakable evidence of its presence.

While out of consideration for the high estimate placed upon the life and limbs of the citizen, all transportation companies employed in conveying their human cargoes from place to place in our cities and towns, are required among its many duties and obligations to so construct its car or vehicles used for that purpose in such a way that passengers using and riding upon them may not only ride therein with safety, but may alight therefrom with equal protection when their destination has been reached; still the requirements of this rule do not go to the extent of imposing upon the transportation companies the duty of so constructing, fortifying and defending their cars with this, that or the other appliance or arrangement, that the passenger shall encounter no danger therein or meet with no possible accident when alighting therefrom.

The plaintiff owed to herself some consideration and to the company some obligation. She must use the car with its wheelhouse and the open space between the wheelhouse and the side of the car with reasonable circumspection and care, and with due regard to their existence, of which in this case she was informed by

both the sense of sight and touch, by the necessity of her position. Was then this wheelhouse or fender such an appliance, considering its construction and location on this car, that defendant could have reasonably anticipated by its use an accident therefrom, after the manner that plaintiff claims her fall was occasioned? This wheelhouse or fender, as well as the three inch opening between it and the side of the car, was patent and open to the observation of plaintiff and all who sought to use defendant's car at that point. It was not only plainly visible, but unchanging in its position, permanent, fixed and stable, involving no uncertainty in its use by a shifting or changing position. Moreover the testimony was that the fender on this car was constructed as on all other summer cars of like character in common use through the country; that there was no defect in its construction; that no accident had before happened from a like cause by the use of similarly constructed cars upon the line of defendant's road or of any road using such cars throughout the country so far as the knowledge of the defendant or any of the witnesses extend.

While general or long continued use of an appliance without injury resulting therefrom, will not exempt the party using it from liability on that ground alone when an injury does actually happen from its defective or imperfect construction, still in this case, we think, that when to the long and successful use without accident, from this appliance on this and other similar cars of defendant, after the manner plaintiff claims to have been injured, and to the adoption and general use of like appliances on similar cars by other transportation companies, where millions of passengers are carried daily, without accident or injury, thereby multiplying and augmenting its indorsement, it is shown that this appliance is open and visible to all

passengers whom it can in anywise affect, and is conceded to be perfect in construction as intended to be used, and is not such an appliance as can be said to be intrinsically dangerous, and that no better or more improved fender on this character of a car was shown to have ever been used by any other of the transportation companies, the defendant should be exempt from liability on the ground that the occurrence of the accident (if it be conceded that it can be explained after the manner testified to by plaintiff) is one of a kind so rare as to be unexpected, and so unexpected as to relieve defendant from the responsibility of guarding against its possibility.

It is not negligence to fail to provide against any injury that might attend the use of an appliance, when that injury (after the manner of the happening of the one in controversy) could not have reasonably been anticipated, and when its liability to happen is only shown by its actual occurrence. Nor is the force of this rule in anywise weakened by merely showing that the particular injury could have been avoided by the adoption of some other and different appliance or by a modified arrangement of or addition to the appliance in use at the time of the accident.

The test under the circumstances of an accident of the kind in suit, is not whether it might not have been avoided after the given way, if it had been anticipated, but whether under the circumstances it was negligence not to have anticipated and provided against its occurrence in the exercise of that reasonable precaution to prevent accident to passengers that would have been adopted by prudent companies managed by prudent officers prior to the accident.

The most stupid mechanic might suggest that if the space between the fender and the side of the car was filled in or boarded up, or if the car had been made

six inches higher, the plaintiff's injury after the way she claims it was occasioned would never have happened, while the most brilliant and skilled artisan and mechanic who had devoted his life to the study, invention and introduction of appliances for use of street car companies most conducive to the safety and comfort of passengers called upon to use this mode of transportation, might find himself in wonderment in an attempt to devise a car so constructed as to meet the requirements of the company, and the demands of the traveling public, and at the same time be as free from danger generally to passengers in getting upon and in alighting therefrom as the car on which plaintiff received her injury with its fender arranged and located on this car, as that was.

The adoption of cars with platforms six inches higher than the platform of this car, as was shown to have been done by one street car company in Kansas City, unquestionably would have made impossible an accident after the manner plaintiff alleges her injury occurred; but there is no evidence that that character of a car is safer or is less liable to cause injury generally to passengers in attempting to alight therefrom, than the low car with its necessary protruding wheel to be guarded by a fender or a wheelhouse. The danger that might possibly result from the use of a fender over the wheels of a car is not the only question to be considered by the company in the construction of its cars, as other possible dangers might be multiplied tenfold in the endeavor to do away with the use of the fender by substituting the higher car. The use of the higher car necessitates more steps or a longer step in alighting from it to the ground than is required with the low car, such as defendant was using, thus suggesting new elements of danger from that point of view, and so the boarding up of the space between the fender and the

side of the car might cause an impediment to the use of the foot of the passenger that would be much more liable to cause him or her to fall by stumbling over it than would occur by leaving it open, so that the foot could be placed therein when attempting to alight and so on, one suggestion might be made after another in favor of this or that appliance or construction of a car without any tangible result being reached. No appliance, for that matter, was ever constructed for the use of man that a possible injury from its use could not be suggested; nor did an accident ever happen from the use of an appliance after a given way, but that its occurrence after that particular way, might not be absolutely guarded against in the future by a remodeling, readjusting or reconstructing of the appliance. There was nothing in the testimony to show the advantage of the high platform car, as a thing of safety to passengers, over the low platform car with the necessary fender or wheelhouse, or that its use had become so general, as a proper mode for constructing cars, as to charge defendant as a carrier of passengers with the duty of its substituting in lieu of the low platform car with its wheelhouse or fender that defendant was using at the time plaintiff received her injury.

In this case there is wanting not only proof of specific negligence in the construction of defendant's car with its fender or wheelhouse, but facts or circumstances from which the use of a negligently constructed appliance could be imputed to defendant, except the single coincident of an injury to plaintiff occasioned from its use, which of itself is not sufficient. There must have existed before some suggestion of danger, in order to make defendant liable as for negligence for its continued operation.

While it is quite difficult in many instances for the court to declare just when an appliance is of that

degree of safety that its operator will be relieved from the liability for injuries caused to others from its use, we think that the fender or wheelhouse as constructed and located on this car is of such a character, viewed in the light of the present surroundings and all the facts disclosed at the trial. The same conclusion as to defendant's nonliability was reached by division number two of this court in a suit wherein plaintiff's husband was suing for his damages arising from the injuries to his wife occasioned by her fall from the car in controversy, reported in 36 S. W. Rep. page 624.

In this state of the record, what disposition should be made at this time of the case?

Prior to 1891 appeals from orders granting new trials to either party to a suit were not permissible, but each party was compelled to await the final judgment of the court before its action at any stage of the trial could be questioned in this court. But since the passage of the act amending section 2246, Revised Statutes, in that year, appeals may be prosecuted from an order granting a new trial, and this court's power and duty in regard to such appeal is the same as in appeals from final judgments, according to the view of the writer. Section 2304, Revised Statutes, provides that in all appeals the appellate court "shall examine the record and award a new trial, reverse or affirm the judgment or decision of the circuit court or give such judgment as such court ought to have given, as to them shall seem agreeable to law." No distinction is made between the different grounds of appeal, or appeals by different parties. All parties to the suit stand upon an equal footing, and this court in its review of the action of the trial judge upon the motion for a new trial (whether it be sustained on being brought here by plaintiff as in this case, or overruled when brought here by the defendant) should extend

its inquiry equally in each case to all the grounds of the motion, and if from the record it appear that no cause of action can be maintained against defendant this court should so declare and not permit the useless ceremony of a meaningless retrial. As no distinction is made in the statute and we think that none should be exercised by the court. The plaintiff here by her appeal challenges the action of the trial court on the motion for a new trial, and asks for a judgment on the record in her favor, made prior to that time, notwithstanding the order of the trial court, and this court in the consideration of her appeal must review that record the same as if the case had been brought here by the defendant after an unsuccessful effort to have the finding and judgment against it set aside, and yet it is suggested as the better practice in case of appeal from an order granting a new trial, when the trial court is sustained, to reverse and remand the cause for a new trial, and not make final disposition of it, as on appeal from final judgments. Why a party to a suit prosecuting an appeal from an order of a court involving a review of the whole record over which appeal he has the absolute control, should be allowed to avoid the full force of our finding on that review, yet should be visited with it when the appeal is taken by the other party, on account of the refusal of the trial court to make the order and the appeal is brought here from the final judgment entered, we are at a loss to understand.

As I understand the statute, this court should give such judgment here, as on the record the trial court should have given without regard to the question of who appeals, the manner of the case reaching this court, or who of the parties had control of the appeal. But independent of the statute, which I think clearly excludes the idea of a distinction between the different grounds of the appeal, every consideration for the

orderly disposition of the business of the court, as well as the honest direction of same, suggest that this court in no case should be required to review a record that is brought before it on appeal, and after learning therefrom that there is no merit in the action brought by the plaintiff, be required to remand the cause to the trial court for further action. It would be an idle and expensive ceremony, productive of no possible good, and tending to produce much probable harm. To remand a cause implies that upon the record a state of facts that would authorize the judgment in favor of the appellant, have been disclosed. To reverse and remand where no right of action is shown to exist in favor of appellant, is to invite a change in the facts, which should never be done except when, from the record, it is disclosed that the right to produce any or all of the legitimate facts of the case was denied to appellant by the trial court, or where it is manifest that facts do exist which by an oversight or some mishap have not been shown, and that may be developed, if a new hearing of the cause is permitted. For the reasons aforesaid, it is my opinion that the order granting a new trial should be affirmed and the cause remanded with directions to enter up a judgment for defendant, and in that opinion SHERWOOD, J., concurs. But a majority of the judges of the court *in banc* hold that the order for a new trial should merely be affirmed for the reasons stated in the accompanying memorandum prepared by BARCLAY, C. J.

The judgment is accordingly affirmed.

## MEMORANDUM.

BARCLAY, C. J.—In this cause plaintiff appealed from a ruling awarding a new trial to defendant on motion of the latter. The ground assigned of record

by the court under section 2241 (R. S. 1889) for grant-ing the new trial was that "the verdict should have been for the defendant under the evidence submitted, instead of plaintiff." One of the fifteen grounds of the defendant's motion for new trial was that "the verdict is against the weight of the evidence."

The learned trial judge may have been of opinion that the weight of the evidence was in favor of defend-ant, and that the verdict should therefore have been rendered for the defendant. The order of the trial court awarding a new trial was within the proper bounds of its discretionary power to determine the weight of evidence; and we think the circuit judgment should therefore be affirmed. *Hewitt v. Steele* (1893) 118 Mo. 463 (24 S. W. Rep. 440); *Bank v. Wood*(1894) 124 Mo. 72 (27 S. W. Rep. 554); *Parker v. Cassingham* (1895) 130 Mo. 348 (32 S. W. Rep. 487). In our opinion it is not necessary for this court (on plaintiff's appeal) to go further into the merits of the case at this time. The judgment should be affirmed. GANTT, MACFARLANE, BURGESS, and BRACE, JJ., concur in this opinion.