# HAVEN v. MISSOURI RAILROAD COMPANY, Appellant.

### Division One, March 14, 1900.

1. **Nominal Damages: VERDICT WHEN SET ASIDE.** The plaintiff is not entitled as a matter of law to have a verdict for nominal damages set aside by the appellate court, unless his case is such that if the verdict had been for the defendant he would have been entitled to have it set aside.

2. ———: **IN EFFECT VERDICT FOR DEFENDANT.** Where the logical finding which the jury could have made from the evidence, in a suit for damages for personal injuries charged to be due to defendant's negligence, was either that the defendant was not negligent or that plaintiff was guilty of contributory negligence, the court should consider the verdict for nominal damages as in effect a verdict for defendant.

3. **Order for New Trial: APPEAL.** An appeal from an order of the circuit court granting a new trial, brings only the ruling of the trial court on the motion for new trial to this court for review. The usual and immemorial practice here obtains in considering the sufficiency of the trial court's reasons for granting the new trial, to-wit, the appeal is here for review on matters of law, and not on the weight of the evidence, nor is this court to substitute its discretion for the discretion of the trial court.

4. ———: ———: **SUBSTANTIAL EVIDENCE: INTERFERENCE.** Although the great preponderance of the evidence shows that the verdict should have been for the defendant, and although the trial court set aside the verdict for nominal damages "for the reason that the jury, having found that the plaintiff was entitled to recover, disregarded the court's instructions as to the measure of damages, and shrunk from deciding the issues submitted to them," yet if there was substantial evidence on which the verdict for plaintiff could rest, this court will not interfere with the discretion of the trial court in giving one new trial.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1) The statute now providing for appeals "from any order granting a new trial" (R. S. 1889, sec. 2246, as amended by laws of 1891, p. 70), it becomes the duty of the court exercising appellate jurisdiction to examine the record, award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given. (2) In trials at common law, the jury are the proper judges of damages; and where there is no certain measure of damages, the court, ordinarily, will not disturb their verdict unless on grounds of prejudice, passion or corruption in the jury. 2 Greenl. on Evid., sec. 255; Boggess v. Railroad, 118 Mo. 338; 1 Sutherland on Damages, 810; Dowd v. Air Brake Co., 132 Mo. 579; Jenkins v. Hankins, 41 S. W. Rep. 1028; 1 Graham & Waterman's New Trials, side page 452. (3) The rule is that in personal actions founded upon tort and sounding merely in damages, a new trial will not be granted on the sole ground of the smallness of damages. Pritchard v. Hewitt, 91 Mo. 550; Gregory v. Chambers, 78 Mo. 294; Watson v. Harmon, 85 Mo. 443; Leahy v. Davis, 121 Mo. 224; Field on Damages, sec. 888. (a) If the smallness of the verdict can be accounted for from the facts shown in the record on any other hypothesis than passion or prejudice on the part of the jury, a new trial should not be granted. Gregory v. Chambers, 78 Mo. 298; Jenkins v. Hankins, 41 S. W. Rep. 1028; Straus v. Railroad, 75 Mo. 185; s. c., 86 Mo. 421. (b) For the purpose of determining this question this court is not confined to the pleadings, verdict and evidence as to the amount of respondent's injuries, but must look to the whole record and determine whether any verdict could have been made in her favor which it would not have been the duty of the trial court to set aside.

Brown v. Union Ry. Co., 51 Mo. App. 192; Phillips v. Phillips, 34 N. J. L. 208.   (c)   If this be found, then the appellant is entitled to have the motion granting a new trial set aside and final judgment rendered on the verdict.   In other words, appellant is entitled to have this verdict treated as one practically in its favor. Ray v. Jeffries, 5 S. W. Rep. 687; Sumall v. Morton, 12 S. W. Rep. 185; Hubbard v. Mason, City, 64 Ia. 245; Pritchard v. Hewitt, 91 Mo. 548; Lancaster v. Ins. Co., 92 Mo. 460; Overholtz v. Vieths, 93 Mo. 422; Leahy v. Davis, 121 Mo. 229; Dowd v. Air Brake Co., 132 Mo. 579; Reeve v. Wilkesbarre Traction Co., 9 Kulp. 182.

*E. C. Miles* and *Chas. B. Stark* for respondent.

MARSHALL, J.—This is an action for damages for personal injuries alleged to have been sustained by the plaintiff while alighting from one of the defendant's trains of cable cars, charged to have been caused by the starting of the train before the plaintiff had time to safely leave it.   There was a verdict for the plaintiff for one cent damages, and upon motion of the plaintiff the trial court granted her a new trial, "for the reason that the jury, having found that the plaintiff was entitled to recover, disregarded the court's instructions as to the measure of damages and have shrunk from deciding the issues submitted to them."   From this order the defendant appealed.

The negligence charged in the petition is that plaintiff was a passenger on defendant's train, and when the train reached 7th and Olive streets, going east, she signaled the conductor to stop the train, which the conductor did, but before she had time to get off and when she was in the act of getting off but while she was still on the platform of the car, the train was suddenly started, in consequence of which she

was thrown off of the car and injured.   The answer is a general denial and a plea of contributory negligence, in this, that without signalling to or notifying the conductor the plaintiff undertook to alight from the train while it was in motion, and that her injuries were caused by her own negligence.

The plaintiff testified that on the day of the accident, December 13, 1895, about nine o'clock a. m., she boarded the train at 27th and Olive street, and when the conductor collected her fare she told him she wanted to get off at Seventh street; that when the train reached Eighth street she motioned to the conductor to stop at Seventh street, and he nodded to show that he understood her; that the train stopped on the east side of Seventh street and several persons rose to get off and she did likewise.   On cross-examination she testified that she was sitting towards the front end of the car and when she was leaving the car she was some distance behind the other persons who were getting off; that the other persons got off the car, and when the last one left the car, she, the plaintiff, was "just half way the length of the car" from that person; that just as she put her left foot down off the car, and while her right foot was still on the steps, the car "gave a jerk and threw me to the pavement; my left side was bruised and my hip considerably."   On re-examination she testified:

•    "Q.   You were asked, on cross-examination, about the intervening space between yourself and the passengers next ahead of you in leaving the car at Seventh street, and you said that probably half the length of the car intervened.   I want to get you to say whether, at the time you were leaving the car and were in the middle of the car, those passengers were in the door or on the platform, or off the step; give some idea about the relative position of yourself in the car with the last passenger leaving the car just ahead of you, who was stepping off the step into the street?"

"Mr. Lehmann:   I think the witness answered that;

she said she was in the middle of the car when the last passenger ahead of her had left the car."

"The Court: I understood her statement to be that at the time the last passenger who was ahead of her stepped off the car, she was about the middle of the car."

"Mr. Stark: That is what I want to fully understand. I didn't understand that was what you meant, or whether the last passenger was in the doorway of the car, leaving the body of the car.

"Q. I would like to have you say what you intended to be understood on that subject? A. That was what I understood—that was what I said.

"Q. Repeat it please. A. That I was in the middle of the car when the last passenger was getting off.

"Q. When he was getting off the step, or getting out of the doorway of the car?"

"Mr. Lehmann: I submit it is fully answered."

(Last question repeated). "A. Whether they were in the doorway or on the step?"

"Mr. Stark: Yes; at the time you were in the center of the car yourself in the act of leaving. A. Yes; I was in the act of leaving just as they were leaving the door, going out of the door on the step, as they were getting off."

"Q. When you were in the middle of the car in the act of leaving the car yourself, state where the passenger next ahead of you was? A. In the act of leaving the car; going out of the door."

Abraham Siegel, a witness for plaintiff, testified that he was standing on the sidewalk on 7th and Olive streets; that the car had stopped before the plaintiff stepped on the step to get off; that several passengers had gotten off of the car and that just as the plaintiff stepped off of the lower platform, had one foot off the lower platform, the bell rang, the car started off, and plaintiff fell lengthwise on the pavement.

Charles J. Conway, another witness for plaintiff testi-

fied, that he was standing in his store with a friend, looking out; that, "All at once I turned to this friend and said, 'watch that lady fall. She is stepping off the wrong way;' " that the car was in motion at the time; that, "It looked to me she was getting off as people always do when they get off the wrong way, the car being in motion; she walked straight down the steps. It impressed me at the time that that would throw her."

This was in substance the plaintiff's case, as to how the accident occurred.

Isaac B. Rosenthal, testified for defendant, that he was a passenger on the car; that the train stopped on the east side of Seventh street and several passengers got off, and when the conductor rang the bell, that the plaintiff then rose from her seat and started to the rear of the car; that the car was in motion while the plaintiff was still on the inside of it, and was moving slowly, as cars usually do when they start up; that the car had gone fifteen to twenty feet, when the plaintiff stepped off it while it was in motion, and that she fell or was thrown down in that way.

John J. Austin, the conductor, testified that after several passengers had gotten off of the train, he rang the bell and the train started; that the plaintiff at that time was sitting on a seat on the south side of the car and near its center; that after the car had started and had gone four or five feet, the plaintiff rose from her seat and started hurriedly to the rear end of the car; that he shouted to her, "Stop, wait till the car stops," but she paid no attention whatever and "walked straight out on the street off the car."

Frank S. Riely, testified for the defendant, that he was a passenger on the car; that the car stopped at Seventh street and several passengers got off; that after the car had started, the plaintiff who was sitting just across the car from him, got up, "went to the back platform, and stepped off while the car was in motion."

Catherine McKenna, testified for the defendant, that: "After the car started up, this lady was sitting opposite me and she got up, and walked out of the door, and walked face forward out on the platform onto the street."

Eliza J. McKenna, testified for the defendant, that the plaintiff was sitting between the center and the front end of the car; that: "After the train had left Seventh street, she got up and left the car, walked out of the car straight out; she didn't go with the car nor she didn't go back, but just straight out—of course fell."

This was all the testimony introduced in the case. The case was submitted to the jury upon instructions as to which there is no question raised here, but which authorized a verdict for the plaintiff if she attempted to get off the train and before she had time to do so the train was suddenly started and she was injured, and which properly stated the measure of her damages, and which authorized a verdict for the defendant if the plaintiff left the car while it was in motion.

I.

But one construction can be put upon the verdict in this case, and that is that the jury believed the testimony of plaintiff's witness, Conway, and of the defendant's witnesses, Rosenthal, Austin, Riely, Catherine McKenna and Eliza Mc-Kenna, that plaintiff attempted to leave the car while it was in motion by walking straight off of the car, and was thereby injured. This is the overwhelming testimony in the case. It is controverted by plaintiff's testimony and that of her witness Siegel, that the car had not started when she attempted to leave it, but that just as she had one foot off of the car, and while the other foot was on the bottom step of the car, the car started and she was thrown down on the pavement. But while she so testifies she also says that when the last passenger that was leaving the car ahead of her, stepped off of the car she was inside of the car and about the center of it, as

she put it on cross-examination—or that when the last pas-
senger ahead of her was going out of the rear door of the car
she was inside of the car and about the center of the car, as
she states it on re-examination. If either of these state-
ments is true, they corroborate the testimony of her witness,
Conway, and of the defendant's witnesses that she left the
car while it was in motion. And. the result is that the jury
must have believed that the defendant was not negligent, or
that the plaintiff was guilty of contributory negligence. This
must be the true reading of this verdict, for it is uncontra-
dicted in this case that the plaintiff sustained serious injury
and that one cent is not a proper compensation therefor.
The jury therefore could not have rendered the verdict be-
cause they found that one cent would compensate the plaintiff
for her injuries. The result is that by the employment of
any known process of reasoning, this verdict must be held to
mean that the jury found that the defendant was not guilty
of negligence or else that the plaintiff was guilty of contribu-
tory negligence. The trial court set the verdict aside, at the
instance of the plaintiff, because the jury having found for
plaintiff the jury disregarded the instructions as to the meas-
ure of damages "and shrunk from deciding the issues sub-
mitted to them."

It is plain that the trial court's criticism of the conduct
of the jury is warranted by the verdict. But it does not
necessarily follow that the plaintiff was prejudiced by the
verdict. The defendant might justly have complained of
the verdict, for it threw the costs of the suit on the defendant.
The plaintiff however is not entitled as a matter of law re-
viewable by this court, to have the verdict set aside unless her
case is such that if the verdict has been for the defendant
she would have been entitled to have the verdict set aside.
In other words, where a jury has returned a verdict for
nominal damages in a case where the plaintiff is not entitled to
any damages, the verdict will not be set aside in the appellate

court at the instance of the plaintiff.   [Pritchard v. Hewitt,. 91 Mo. l. c. 550; Overholt v. Vieths, 93 Mo. l. c. 426; Leahy v. Davis, 121 Mo. l. c. 236; Dowd v. Air Brake Co.,. 132 Mo. 579.]

Under the rule established by these cases, if the trial court had refused to grant this plaintiff a new trial, this court would have refused to interfere.   The converse of the conditions in the cases cited is, however, present in this case.   The trial court granted the plaintiff a new trial, and the proposition here presented is the power and duty of this court as to that ruling of the trial court.

Under section 2246, R. S. 1889, as amended by the Act of 1891 (Laws 1891, p. 70), and by the Act of 1895 (Laws 1895, p. 91), the defendant was entitled to appeal from the order granting the plaintiff a new trial, and on such an appeal the appellant is only bound to show that the trial court erred in granting the new trial for the reason given by that court in so doing.   [Ittner v. Hughes, 133 Mo. l. c. 688.] When such an appeal reaches the appellate court, the duty of that court has been pointed out in Candee v. Railway Co., 130 Mo. l. c. 154, by GANTT, P. J., as the following:   "The granting of an appeal from an order setting aside a verdict is an innovation in appellate practice and we must endeavor to effectuate the intention of the legislature and in our opinion this statute will fall short of its purpose if we are to indulge in the presumptions which obtained prior to its enactment, and which do not at all consist with its express terms. If the trial court assumes to set aside a verdict for any reason not contained in the motion, it is still its duty to specify that reason upon the record, but, whatever the grounds for its order, it was clearly the intention of the statute to give the right of appeal from its decision thereon and if in the opinion of the appellate court its reasons are insufficient the verdict must stand and the costs of another trial be avoided, in the absence of affirmative showing by the party in whose favor

the new trial was granted that it was properly set aside on other grounds. As the circuit court specified but one ground for disturbing this verdict and, in our opinion, erred in so doing because the instruction was proper, and as there was no exceptions saved on the trial to evidence, or the giving of instructions, no other question is before us for review, and it results that the order granting a new trial must be reversed, and the record remanded with directions to enter judgment for defendant upon the verdict rendered.".

In Merriam v. Railroad, 136 Mo. 145, section 2246, and the amendments of 1891 and 1895, were again considered and construed, and GANTT, P. J., said: "As our jurisdiction is appellate we are necessarily restricted to the record brought up for review. With that limitation only it is not only our prerogative but obvious duty to review the action of the circuit court and determine from the *law* and the *facts* of the case whether the circuit court exercised a sound *discretion*," etc.

The meaning of the section and the amendments referred to has also been considered in the following cases: Railroad v. Wear, 135 Mo. l. c. 259; State ex rel. v. Hirzel, 137 Mo. l. c. 443; Glover v. Bond Inv. Co., 138 Mo. l. c. 415; Thompson v. Railway Co., 140 Mo. 125; State ex rel. v. Gates, 143 Mo. 63.

In Thompson v. Railway Co., 140 Mo. 125, there was a verdict for the plaintiff, and upon motion by the defendant the court set the verdict aside, assigning as reason, "that the verdict should have been for the defendant under the evidence submitted instead of plaintiff." The plaintiff appealed, and in this court the defendant insisted that the new trial should have been granted not only for the reason given by the trial court, but also because of other reasons stated in the motion for new trial. ROBINSON and SHERWOOD, JJ., were of opinion that the facts disclosed at the trial did not

warrant a recovery by the plaintiff and that this court should do what the trial court ought to have done, declare that a peremptory instruction for defendant should be given, and thereby save the useless expense of a new trial. But the majority of this court, per BARCLAY, J., after referring to the fact that the only reason given by the trial court was that the verdict should have been for the defendant, also called attention to the fact that one of the fifteen grounds of defendant's motion for new trial was that "the verdict is against the weight of the evidence," and then said: "The learned trial judge may have been of opinion that the weight of the evidence was in favor of defendant, and that the verdict should therefore have been rendered for the defendant. The order of the trial court awarding a new trial was within the proper bounds of its discretionary power to determine the weight of evidence; and we think the circuit judgment should therefore be affirmed......In our opinion it is not necessary for this court [on plaintiff's appeal] to go further into the merits of the case at this time."

State ex rel. v. Gates, 143 Mo. 63, was a mandamus to compel the circuit judge to proceed with the trial anew notwithstanding an appeal, without bond, was pending from the order granting a new trial. BRACE, P. J., construed section 2246, and the acts amendatory thereof, and held that the effect of the appeal was "to transfer the jurisdiction of the case from the circuit court to the appellate court, from the operation of which, however, is excepted the execution on the judgment appealed from in all cases except those stated in section 2249."

A comparison of these cases will show quite a difference in the principles they announce. For instance: Ittner v. Hughes, 133 Mo. 688 and Candee v. Railway Co., 130 Mo. 154, hold that the defendant is only bound to show that the trial court erred in granting the new trial for the reason given by that court in so doing, while in Thompson v. Rail-

way Co., 140 Mo. 125, the court looked behind the one reason assigned by the trial court and held that the trial court might have granted the new trial for a reason not assigned by the court, but contained in the motion for a new trial, to-wit, that the verdict was against the weight of the evidence, and if the trial court granted the new trial for that reason, albeit the trial court did not place its action upon that ground, then it was within the discretion of the trial court, and hence this court would not interfere.    Again, in Candee v. Railway Co., 130 Mo. 154, and in Merriam v. Railroad, 136 Mo. 145, it was held that upon such appeals it was the prerogative and duty of this court to review the action of the circuit court and determine from the *law* and the *facts* of the case whether the circuit court exercised a sound judicial *discretion*, thereby supporting the view taken by SHERWOOD and ROBINSON, JJ., in Thompson v. Railway Co., 140 Mo. 125, yet in the Thompson case the majority of the court held that if a trial judge granted a new trial because the verdict was against the weight of the evidence, he exercised a *discretion*, which was not open to review on appeal.

The conflict seems to have arisen from difference in the proper construction to be placed upon the reason, purpose and spirit of the acts of 1891 and 1895.    On the one hand the majority opinion in Thompson v. Railway Co., 140 Mo. 125, seems to proceed upon the theory that on appeals under the acts of 1891 and 1895 this court will treat the case just as it formerly did cases that came here after final judgment and will not interfere with discretionary rulings of the trial court, and will not weigh conflicting evidence, but will reverse the judgment if there is no substantial evidence to support it, or if errors of law were committed by the trial court, while on the other hand the opinions in Candee v. Railway Co., 130 Mo. 154, and Ittner v. Hughes, 133 Mo. 688, hold that the court, on such appeals, will not "indulge the presumptions which obtained prior to its enactment" (referring to the acts

of 1891 and 1895) "and which do not at all consist with its express terms," and that the prerogative and obvious duty of this court in such cases is to review the action of the trial court "and determine from the law and the facts of the case whether the circuit court exercised a sound judicial discretion."

In other words the first theory applies the appellate practice, while the second theory gives this court all the powers of a circuit court including its discretionary powers in passing on a motion for a new trial, and authorizes and requires this court to do what the circuit court ought to have done.

Under the first theory the labors of this court would be very much reduced and its duty very simple, while under the second theory a greater burden is cast upon this court than rests upon the trial court, for this court is necessarily compelled to study the whole case and pass upon facts, without seeing the witnesses, all of which was familiar to the trial court.

The original purpose of the acts of 1891 and 1895 was to remedy inconveniences arising in partition cases, injunction cases, in arrest of judgment, and the granting of new trials in cases where no verdict in favor of the party at whose instance the new trial was granted could ever be allowed to stand. Prior to the passage of these acts no appeals were permitted until final judgment, and if a new trial was granted by the trial court the only way open to the losing party in the motion to have the ruling of that court reviewed was to save proper exceptions, abandon his case, permit final judgment to go against him and then appeal. In other words to risk his whole case upon the soundness of his judgment with respect to the ruling of the court on the motion for a new trial. It was, *inter alia*, to remedy this hardship that these acts were passed. There is no intention expressed in these acts to require this court to treat such appeals

taken before final judgment any differently from the practice that obtained in this court with respect to such matters before the act was passed. The evident purpose was to enable the losing party in the motion to obtain a ruling from an appellate court upon the judgment of the trial court on the motion before there was a final judgment in the cause and to relieve the losing party to the motion of the necessity of standing on the ruling and permiting judgment to go against him in order to secure the opinion of the appellate court.

Under the old practice this court applied the appellate practice and refused to weigh conflicting evidence or to reverse the ruling below on discretionary matters, and interfered only for errors of law, or where conceding everything that was stated or pointed out by the party in whose favor a new trial had been granted that party was not entitled to a verdict. Pritchard v. Hewitt, 91 Mo. l. c. 550; Overholt v. Vieths, 93 Mo. l. c. 426; Leahy v. Davis, 121 Mo. l. c. 236; Dowd v. Air Brake Co., 132 Mo. 579; Hormuth v. Railway Co., 129 Mo. l. c. 642, and Bartley v. Railway Co., 148 Mo. 124, illustrate this rule. The acts of 1891 and 1895, as above shown, only bring the ruling of the trial court on the motion for new trial to this court for review before a final judgment instead of afterwards as was formerly the case. No other change in procedure is expressed or contemplated by those acts. The case is here on appeal and the usual and immemorial appellate practice must obtain. It is here for review on matters of law, not on the weight of the evidence nor for this court to substitute its discretion for the discretion of the trial court. This is all the statute intended to accomplish. Any other construction would be putting into the act what the lawmakers did not see fit to do, and would not only overburden this court, put it in the position of finding a verdict on the facts when it did not see or hear the witnesses, but would seriously delay litigation by inviting or encouraging litigants to appeal from every ruling

granting a new trial, and thereby transfer the *case* to this court (State ex rel. v. Gates, 143 Mo. 63) and tie the hands of the trial court pending the appeal.

Taking this view of the acts of 1891 and 1895 and applying it to the case at bar the result is, that it can not be said that this is a case where no verdict for the plaintiff could ever be permitted to stand. The fact is that the great preponderance of the evidence is in favor of the defendant and shows very conclusively to any impartial mind that the plaintiff's injuries were sustained in consequence of her own negligence and that the defendant was not negligent. But while this is true it is likewise true that if all the plaintiff claims and testifies to be conceded, it can not be said she would not be entitled to recover. For she—in a very lame way—and her witness Siegel, in a positive way, testify that while she was alighting from the car—while she had one foot off the car and the other on the bottom step—the car was started and she was thrown to the pavement and injured. If this be true, she is entitled to recover. Whether it is true or not is a question for the jury, for it is some substantial testimony which will take the case to the jury (James v. Ins. Co., 148 Mo. l. c. 15 and 16) as distinguished from a mere shadow or scintilla of testimony, which would not entitle her to go to the jury. [Powell v. Railroad, 76 Mo. l. c. 84, citing and following Commissioners v. Clark, 94 U. S. 284.]

If the jury had found for the defendant in this case, and the trial court had refused to grant the plaintiff a new trial, there is no error of law apparent on this record which would have warranted a reversal of that judgment by this court. Or, if in such an event the trial court had granted a new trial because the verdict was against the evidence, this court would not have interfered, although of opinion that the trial court was mistaken in its judgment as to the preponderance of the evidence, for it is the prerogative and duty of a trial court to grant one new trial when in its opinion the

verdict is against the weight of the evidence (section 2241, R. S. 1889), and this court will never interfere in such cases, unless the action of the trial court was purely arbitrary. So if the jury had found for the plaintiff and assessed her damages at a compensatory amount, and the trial court had refused to grant a new trial to the defendant, this court would not have interfered because it would not weigh the evidence, and because there was some substantial evidence to support the verdict. Or if the jury had so found, and the trial court had granted the defendant a new trial because the verdict was against the weight of the evidence, this court would not have interfered.

But none of these conditions are present in this case. The verdict is for the plaintiff, and yet she is given no damages commensurate with the injuries she received. Regarded as a verdict in effect for the defendant, the trial court had a right to grant the plaintiff a new trial because that court believed the verdict was against the weight of the evidence (which was one of the grounds for new trial assigned), and this court, although disagreeing with that opinion, has no right to interfere. Neither can this be regarded as a case where, conceding all the plaintiff says and shows, a verdict for the plaintiff could not stand. For as herein shown, if the plaintiff's testimony and that of her witness Siegel be true, that constitutes some testimony upon which the verdict could rest, and as this court will not weigh conflicting testimony, we could not set aside such a verdict, if the trial court refused to do so.

The reason assigned by the trial court can only be construed to mean that the trial judge was of the opinion that upon the evidence adduced the plaintiff was entitled to a verdict, and being so entitled the jury found for the right party, but erred in not pursuing the finding to its logical conclusion of giving the plaintiff compensatory damages, and therefore the verdict on the question of the damages was con-

trary to the instruction of the court, and likewise contrary to the uncontradicted evidence as to the damages sustained, and hence the verdict ought to be set aside. So regarded, the ruling was within the discretionary power of that court, and under the practice of this court, that ruling can not be interfered with.

In any view of the case the verdict is illogical. But if the trial court had treated it as, in effect, a verdict for the defendant, this court would have been satisfied, for the plaintiff would have had no just ground to complain, as it relieved her of the costs in the case, which a proper verdict would have assessed against her. The judgment of the circuit court is affirmed on the sole ground that in granting the plaintiff a new trial that court exercised a discretion which is vested in it, and which this court will not review except when arbitrarily exercised, which can not be fairly said to be true in this case.

All concur, except *Robinson, J.,* absent.